IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Cr. No. 20-01370-KWR |
| **JULIAN LUCAS GARCIA III**, | ) |
| Defendant. | ) |

## UNITED STATES' OPPOSED SECOND MOTION IN LIMINE TO PRECLUDE DEFENSE EVIDENCE OR COMMENT

The United States respectfully moves this Court for an order prohibiting Defendant, his counsel, and any defense witnesses from asking any question, introducing any evidence, or making any statement regarding the following matters while the jury is present. Defendant was contacted for his position on this motion and did not provide a response. The United States assumes that Defendant opposes the instant motion.

**1. Discussion**

**A. ALLEGATIONS OF GOVERNMENT MISCONDUCT**

The United States moves this Court to preclude Defendant and his counsel from introducing any evidence, making any statement, or asking any questions regarding allegations of government misconduct or constitutional violations while the jury is present. Defendant should not be allowed to present allegations of government misconduct, constitutional violations, or any other issues to the jury because, *inter alia*, the probative value of such allegations would be substantially outweighed by the prejudice and jury confusion that such allegations would create. Fed. R. Evid. 401, 402 and 403.

Moreover, such allegations, if allowed before the jury, would run the risk of creating mini-trials about issues that are questions of law that the jury should and will be wholly unaware of, absent Defendant raising them in advance. Fed. R. Crim. Pro. 12(b)(3). For this reason, evidence, testimony, questions, and argument regarding such allegations should be excluded if not properly made before trial. *Id.*

No evidence of government misconduct or constitutional violations is known to exist by the United States. This is a prophylactic request made in an abundance of caution. Because the United States has not identified "the particular evidence at issue and [has not] articulate[d] with specificity the arguments supporting the position that the particular evidence is inadmissible on any relevant ground," *United States v. Cline*, 188 F. Supp. 2d at 1292, the government grants that the Court may hold a ruling on this matter in abeyance. However, the government respectfully requests that should Defendant wish to present such evidence, he should bring it to the Court's attention before introducing it at trial in front of the jury.

### B. PRE-TRIAL RULINGS

Similarly, and for some of the same reasons, this Court should preclude Defendant and his counsel from introducing any evidence, making any statement, or asking any questions regarding the contents of, or rulings on, any motions filed by either Defendant or the government pretrial while the jury is present. Fed. R. Evid. 401, 402 and 403. More concretely, Defendant should be barred from advancing any line of inquiry that seeks an alternative means of admitting evidence or testimony contrary to a prior ruling without first providing notice to the Court and counsel.

### C. PLEA NEGOTIATIONS

The United States moves this Court to preclude Defendant and his counsel from

introducing any evidence, making any statement, or asking any questions regarding the occurrence and/or substance of any plea negotiations that may or may not have taken place while the jury is present, as such matters are not proper concerns for the jury. Fed. R. Evid. 401, 402 and 403; *see also* Fed. R. Evid. 410 (generally providing that information provided by a defendant during plea negotiations may not be offered against a defendant in a criminal case except under limited circumstances).

### D. OFFERS TO STIPULATE

The United States moves this Court to preclude Defendant and his counsel, while the jury is present, from introducing any evidence, making any statement, or asking any questions regarding Defendant volunteering, offering, or in any manner agreeing to stipulate to certain facts unless some agreement between all parties with approval of the Court has been arranged concerning a stipulation. Fed. R. Evid. 401, 402 and 403; *United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008) ("[I]t is 'unquestionably true as a general matter,' that 'the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.'" (quoting *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997)).

### E. INFORMATION KNOWN ONLY TO DEFENDANT

The United States moves this Court to preclude Defendant and his counsel from, while the jury is present, introducing any evidence, making any statement, or asking any questions regarding any information or facts that could only otherwise come to the jury's attention through the sworn testimony of Defendant, unless Defendant's counsel informs the Court that Defendant will, in fact, testify.

More specifically, the Court should not permit Defendant to introduce any irrelevant, prejudicial, self-serving, exculpatory, and/or inadmissible hearsay statements not offered against interest under Fed. R. Evid. 401, 402, 403, 801, 801(d)(2)(A) and 804(b)(3). The Government intends to introduce portions of recordings of Defendant's prior statements in interviews pursuant to Fed. R. Evid. 801(d)(2) and 804(b)(3). The portions will include self-inculpatory statements. The Court should preclude Defendant from eliciting testimony regarding any other of his own prior statements not affirmatively admitted by the Government and should not allow Defendant to argue for entire recordings to be admitted via Fed. R. Evid. 106, the rule of completeness.

Generally, a statement made by an out-of-court declarant is inadmissible when it is offered at trial to prove the truth of the matter asserted. Fed. R. Evid. 801(c), 802. However, a Defendant's self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are, therefore, not hearsay. Fed. R. Evid. 801(d)(2). See also *United States v. Woody*, 336 F.R.Ds. 293, 362 (D.N.M. 2020) (Browning, J.) (holding that a Defendant's prior out of court statements are hearsay when offered by Defendant, "and thus inadmissible . . . but they are not hearsay when the United States offers them."). Unless Defendant takes the stand, the speaker of these statements cannot be cross-examined, and therefore, these statements are not sufficiently reliable for the jury to consider. Moreover, the statements are classic hearsay. The United States anticipates that Defendant will seek to introduce such improper statements in his trial through witnesses, thereby shielding him from testimony.

Upon admission of the government's redacted recordings, Defendant should not be allowed to admit his self-exculpatory statements through the Government's evidence by utilizing Fed. R. Evid. 106, the rule of completeness. The rule of completeness permits admission of

otherwise inadmissible statements in rare situations. Fed. R. Evid. 106. First, the rule applies only to writings and to recorded statements. *Id*. Second, the rule is limited to portions that "in fairness ought to be considered at the same time." *Id*. A court "need only admit the remaining portions of the statement which are needed to clarify or explain the portion already received." *United States v. Haddad*, 10 F.3d 1252, 1259 (7th Cir. 1993). See *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) ("The rule of completeness, however, does not necessarily require admission of [an entire statement, writing or recording.] Rather, only those portions which are 'relevant to an issue in the case' and necessary 'to clarify or explain the portion already received' need to be admitted.") (Citations omitted).

If the admitted portion is clear, admission of only the inculpatory portions of a statement is permissible. *United States v. Branch*, 91 F.3d 699, 726 (5th Cir. 1996). To rule otherwise would permit a jury to consider Defendant's version without subjecting him to the rigors of cross-examination. See *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999) ("[A] defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."). "In determining whether a disputed portion of a statement must be admitted [under the rule of completeness], the trial court should consider whether '(1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding of the evidence.'" *Lopez-Medina*, 596 F.3d at 735 (citations omitted). Therefore, Defendant's self-serving statements should not be admitted under the rule of completeness as these statements would confuse and mislead the jury as to the relevant facts at issue.

As such, this Court should not allow Defendant to elicit or present testimony regarding his prior interviews to any extend beyond that which is admitted by the United States per the

5

Federal Rules of Evidence. To the extent Defendant believes the jury should hear additional information regarding either of these interviews, he must take the stand to provide it.

### F. INFORMATION ABOUT DEFENDANT'S FAMILY AND PERSONAL CIRCUMSTANCES

The United States moves this Court to preclude Defendant and his counsel from, while the jury is present, introducing any evidence, making any statement, or asking any questions regarding any information or facts about Defendant's family and personal circumstances that are not relevant to the events described in the indictment. For example, upon information and belief, the United States understands that Defendant has an elderly father or elderly parents and is concerned about how a guilty finding in this case could affect his family's elder care considerations. However, such considerations are not appropriate for the jury's consideration on the merits of this case under Fed. R. Evid. 401 and 403. These are extenuating matters most appropriately presented in presentencing if the jury reaches a guilty finding.

If Defendant decides to testify, his counsel has every right to inquire as to biographical details. This may elicit a response that Defendant has parents whom he lives with or near and works with. Such descriptions should be the end of that inquiry because more detail would confuse the issues, mislead the jury, and would inappropriately appeal to the jurors' emotions and sympathies.

### G. ADMINISTRATIVE DISCIPLINE

The United States moves this Court to preclude Defendant and his counsel from engaging in any attempt to impeach any witness with prior administrative disciplinary findings unless and until the Court has an opportunity to review such evidence to determine its admissibility. Fed. R. Evid. 608(b) allows for evidence of specific instances of conduct to be inquired into on cross-

examination if probative of truthfulness or untruthfulness at the discretion of the Court. The United States asks that Defendant's counsel approach the bench before delving into such evidence, thereby allowing the Court to make the appropriate determination on admissibility.

No evidence of prior administrative disciplinary matters for government witnesses is known to exist by the United States. This is a prophylactic request made in an abundance of caution. Of course, evidence relating to a witness's truthfulness, bias, and credibility are always at issue and may be questioned pursuant to Fed. R. Evid. 608. Thus, the court may not be able to provide a categorical exclusion of all prior administrative discipline. That said, such impeachment evidence does not enjoy automatic admissibility and must adhere to proper foundation and bear on the witness' testimony. If such evidence arises from Defendant, the United States will address each instance's admissibility as impeachment evidence.

### H. DEFENSE EXHIBITS

The United States also moves this Court to preclude Defendant and his counsel from, while the jury is present, introducing any evidence, making any statement, or asking any questions regarding defense exhibits that have not previously been supplied to counsel for the United States. Under Fed. R. Crim. P. 16(d)(2)(C), if a party fails to comply, the Court may prohibit the party from introducing the undisclosed evidence. Under both Rule 16 and the Discovery Order in this case (Doc. 14), Defendant is required to provide reciprocal discovery to the government. As of the date of this filing, no reciprocal discovery has been provided to the United States in this case.

### I. DEFENDANT'S HEALTH

The Court should act to preclude Defendant and his counsel from, while the jury is present, introducing any evidence, making any statement, or asking any questions regarding

Defendant's mental or physical health, including, without limitation, past or current diseases, traumas, illnesses, attacks, and medical or psychological conditions. Fed. R. Evid. 401 and 402. As a foundational matter, the danger of unfair prejudice flowing from evidence of Defendant's health would substantially outweigh its probative value and it "would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward [Defendant]." *United States v. Begay*, 497 F.Supp.3d 1025, 1090 (D.N.M. 2020) (Browning, J.). See also *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999).

The United States is not aware of any condition or claim that Defendant may raise at trial. Thus, this is a prophylactic request made in an abundance of caution.

### J. REFERENCES TO PUNISHMENT

The United States moves this Court to preclude Defendant and his counsel from introducing any evidence, making any statement, or asking any questions regarding sentencing-related issues, including, but not limited to, the advisory sentencing guideline range application and the penalties Defendant faces if convicted at trial.

Defense comments warning a jury against "taking away defendant's freedom," "sending him to jail," "taking him away from his family," or any statement regarding possible consequences serve no purpose at trial. The mention of such facts serves only to put before the jury the matter of what sentence or consequences a defendant might receive and, if it occurs, can only be intended to arouse the jury's sympathy or prejudice. Consequences of a guilty verdict are not relevant to the jury's determination of guilt and any mention of them before the jury would be prejudicial. The Tenth Circuit has fashioned a bright line rule that "[u]nless a statute specifically requires jury participation in determining punishment, the jury shall not be informed of the possible penalties." *United States v. Parrish*, 925 F.2d 1293, 1299 (10th Cir. 1991) (overruled

on other grounds); see also *United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir. 1980) (noting that absent a statutory requirement that the jury determine punishment, "nothing is left 'for jury determination beyond the guilt or innocence of an accused.'") (quoting *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971); and *Rogers v. United States*, 422 U.S. 35, 40 (1975) ("The jury has no sentencing function and should reach its verdict without regard to what sentence might be imposed.").

To allow a jury to consider punishment is an invitation for jury nullification, as the jury would consider something other than the evidence when determining guilt or innocence. The Tenth Circuit has also held that there is no right to jury nullification. *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (citing *United States v. Thomas*, 116 F.3d 606, 615 (2nd Cir. 1997) (observing that "the power of juries to 'nullify' or exercise a power of lenity is just that - a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent.")); *see also Greer*, 620 F.2d at 1385 (10th Cir. 1980) (noting "[t]he authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial. Breach of this standard has often been grounds for reversal.").

Other circuits have ruled similarly. In *United States v. Johnson*, 62 F.3d 849, 850-51 (6th Cir. 1995), the district court declined a defendant's request to inform the jury regarding the defendant's punishment. In affirming, the circuit court reasoned:

> When a jury has no sentencing role, providing sentencing information invites jurors to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion. Indeed, the only possible purpose that would be served by informing jurors of the mandatory sentence would be to invite jury nullification of the law.

The court in *Johnson* also stated: "[t]he jury is to find guilt or innocence on the basis of the legal standards set out in the Judge's charge, and the consequences in terms of punishment is a matter

on other grounds); see also *United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir. 1980) (noting that absent a statutory requirement that the jury determine punishment, "nothing is left 'for jury determination beyond the guilt or innocence of an accused.'") (quoting *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971); and *Rogers v. United States*, 422 U.S. 35, 40 (1975) ("The jury has no sentencing function and should reach its verdict without regard to what sentence might be imposed.").

To allow a jury to consider punishment is an invitation for jury nullification, as the jury would consider something other than the evidence when determining guilt or innocence. The Tenth Circuit has also held that there is no right to jury nullification. *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (citing *United States v. Thomas*, 116 F.3d 606, 615 (2nd Cir. 1997) (observing that "the power of juries to 'nullify' or exercise a power of lenity is just that - a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent.")); *see also Greer*, 620 F.2d at 1385 (10th Cir. 1980) (noting "[t]he authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial. Breach of this standard has often been grounds for reversal.").

Other circuits have ruled similarly. In *United States v. Johnson*, 62 F.3d 849, 850-51 (6th Cir. 1995), the district court declined a defendant's request to inform the jury regarding the defendant's punishment. In affirming, the circuit court reasoned:

> When a jury has no sentencing role, providing sentencing information invites jurors to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion. Indeed, the only possible purpose that would be served by informing jurors of the mandatory sentence would be to invite jury nullification of the law.

The court in *Johnson* also stated: "[t]he jury is to find guilt or innocence on the basis of the legal standards set out in the Judge's charge, and the consequences in terms of punishment is a matter

for Congress . . . or for the Court . . . ." *Id.* at 850 (quoting *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970)); see also *United States v. Meredith*, 824 F.2d 1418, 1429 (4th Cir. 1987) (noting "[t]he jury must reach its verdict without considering possible sentences"); *United States v. Trujillo*, 714, F.2d 102, 106 (11th Cir. 1983) (holding that "defense counsel may not argue jury nullification during closing argument"); *United States v. O'Brien*, 609 F.2d 895, 897 (8th Cir. 1979) (observing "[t]he matter of assessing penalty is exclusively within the province of the court, and the jury's sole purpose is to determine the facts and thereby the guilt or innocence of the defendant"); and *United States v. Davidson*, 367 F.2d 60, 63 (6th Cir. 1966) (noting that "[i]t is axiomatic that it is the exclusive function of juries to determine whether defendants are guilty or not guilty, and of the court to determine matters of punishment."). The law on this issue is well-settled and squarely forecloses defendant's discussion of any possible penalty at trial.

Allowing Defendant to inject discussion as to the possible penalty would contradict the jury instructions regularly given by this Court. Tenth Circuit Pattern Jury Instruction 1.04 states that it is the jury's duty "to base [its] verdict solely upon the evidence, without prejudice or sympathy." Similarly, Instruction 1.20 instructs the jury that "[i]f [it] find[s] the defendant guilty, it will be [the Court's] duty to decide what the punishment will be. [It] should not discuss or consider the possible punishment in any way while deciding [its] verdict."

### K. **CONTRIBUTORY NEGLIGENCE**

The United States moves this Court to preclude Defendant and his counsel from introducing any evidence or from making any statement or argument implying comparative negligence or contributory negligence are lawful considerations for the jury.

Criminal law explicitly rejects contributory negligence and assumption of risk as

defenses to criminal charges by an individual. See *United States v. Skeen*, No. 15-CR-01142-KG, 2016 WL 10588084, at *5 (D.N.M. Mar. 9, 2016) (Gonzales, J.) (unpublished) (questioning in dicta whether there is authority that contributory negligence applies in criminal law). Although such negligence schemes are present in civil proceedings, there are marked differences between torts and crimes; torts are wrongs against private individuals and businesses while crimes are wrongs committed against the public which may also involve a particular victim.

Here, the victim's conduct—crossing a two-lane road on foot—cannot be fashioned into a lawful defense because the Indictment charges defendant with acts that are the substantial causes of the assault. This is because criminal acts impose upon the state a duty to punish the wrongdoer. See *People v. McKee*, 251 P. 675, 678 (Cal. App. 2d Dist. 1926) ("Contributory negligence, if shown, is never a defense or excuse for crime, nor can it to any degree serve to purge an act otherwise constituting a public offense of its criminal character."). While torts are private actions which deal in damages, criminal law does not focus on monetary repair or restoration of a status quo. Thus:

> Criminal law does not address moral parity. In criminal law, the issue is not whether one individual has the right to recover from another. The issue is the defendant's criminally deviant behavior. That behavior is deviant whether the victim contributed to it or not. The victim's negligent acts or knowing exposure to risk do not relieve the state of its duty to punish deviant behavior. The victim's deviant behavior can be punished separately. . . . The state has no interest in the private balance of harm between the two individuals. The state only has an interest in the defendants' criminal behavior vis-a-vis society.

Aya Gruber, *Pink Elephants in the Rape Trial: The Problem of Tort-Type* <u>Defenses in the Criminal Law of Rape</u>, 4 Wm. & Mary J. Women & L. 203, 238–40 (1997) (internal citations and footnotes omitted).

### L. **VICTIM'S PRIOR ALLEGED CONSUMPTION OF ALCOHOL**

The United States moves this Court to preclude Defendant and his counsel, while the jury is present, from introducing any evidence, making any statement, or asking any questions regarding Jane Doe's blood ethanol level recorded at the emergency department after the assault. The Court should prohibit the evidence set forth below because it is inadmissible hearsay under Fed. R. Evid. 801, is irrelevant under Fed. R. Evid. 401, and because its probative value is substantially outweighed by the danger of unfair prejudice and confusing the issues under Fed. R. Evid. 403. It should also be barred under 18 U.S.C. § 3771 (a)(8) in favor of the victim's right to be treated with fairness and with respect for the victim's dignity and privacy.

At approximately 21:48 (9:48 p.m.) on the night of the assault, medical staff at Presbyterian Hospital Espanola took a blood sample from Jane Doe for purposes of providing medical care. The labs were completed over the next 30 minutes. Exhibit 1. The lab result indicated an "Abnormal" flag for Doe's ethanol level and provided a value of "161." *Id*. The comment on the results also stated:

> On average, **serum/plasma ethanol levels are greater than whole blood ethanol levels**. Divide by 1.18 for approximate conversation of serum/plasma levels to towhole blood levels. **For medical screening purposes. No chain of custody obtained.**

(Emphasis added).

From Presbyterian Hospital Espanola, Jane Doe was taken by air ambulance to the University of New Mexico Hospital (UNMH) for higher level care. At 0:04AM on July 5, several hours after the assault, medical staff at UNMH took another blood sample for the same purposes. The ab result indicated a value of "103" and was also measured on the serum/plasma range. Exhibit 2. This test result contained two relevant comments. The first was the same as above:

12

> On average, **serum/plasma ethanol levels are greater than whole blood ethanol levels**. Divide by 1.18 for approximate conversation of serum/plasma levels to towhole blood levels. **For medical screening purposes. No chain of custody obtained.**

(Emphasis added). The second comment stated:

> For medical screening purposes only. **Not valid for legal or employment testing purposes. Positive screen results suggest presence of drug of that class in urine at a concentration above stated cut-off. Occasionally false positive screening results can occur due to other drugs or metabolites present in urine.**

(Emphasis added).

The medical records that contain these results are inadmissible hearsay under Fed. R. Evid. 801. There is no person identified who took these samples nor who tested them. Therefore, their authenticity and reliability cannot be proven. These tests and their results are also not properly categorized as exceptions to the hearsay rule as statements made for medical diagnosis or treatment under Fed. R. Evid. 803(4). To be admissible, a statement must be made for medical diagnosis and must describe "medical history; past or present symptoms or sensations; their inception; or their general cause." *Id*. This exception does not cover all assertions in medical records and it certainly does not cover tests conducted by others; "to fall within the exception, the statement must be obtained from the person seeking treatment." *Stull v. Fuqua Indus., Inc*., 906 F.2d 1271, 1274 (8th Cir. 1990). These medical records, and the exhibits provided, merely memorialize the treatment provided to Jane Doe. The records of this treatment are assertions made by medical personnel, not the Doe. Therefore, the hearsay exception for a statement made for medical treatment is inapplicable.

These results are irrelevant since whether Jane Doe consumed alcohol before the assault is a matter that can be elicited from witnesses at the scene or who were with her earlier in the

13

evening. Fed. R. Evid. 401. Further, inquiry regarding these results would be misleading, would confuse the issues, and would inject unfair prejudice that would substantially outweigh the probative value of this evidence. Fed. R. Evid. 403. This is because, first, the evidence itself provides that it is not intended for use in a legal proceeding. Second, these rapid tests were conducted to give medical personnel guidance for their treatment regime, but no chain of custody was obtained in either case. Third, the people who drew blood and who conducted the tests are not identifiable. Fourth, these were serum/plasma tests rather than whole blood tests, and therefore are not reliable legal conclusions for blood alcohol content in a court of law. Fifth, the results themselves provide the disclaimer that the levels indicated by the test are not necessarily precise but only suggests the presence of a drug at a level above a stated cut-off and that false positive screening results can occur in this kind of test.

Finally, these results should also be barred under the Crime Victims' Rights Act. The Act provides victims of federal offenses with eight enforceable rights, and requires the government and Court ensure the crime victim's rights are accorded. See 18 U.S.C. § 3771. One of these rights is the right to be treated with fairness, and with respect for the victim's dignity and privacy. See 18 U.S.C. § 3771 (a)(8). As set forth above, this evidence is irrelevant, not probative of the victim's veracity, and would be unfair and unduly prejudicial. Allowing the Defendant to present evidence of the victim's alleged prior alcohol use by using these records invades the victim's privacy. The victim's dignity and privacy should be protected. See 18 U.S.C. § 3771 (a)(8).

**2. Conclusion**

Accordingly, the United States respectfully moves this Court to grant the United States' motion and order Defendant, his counsel, and all defense witnesses to refrain from asking any

question, introducing any evidence, or making any statement or argument that, either directly or indirectly, implicates the foregoing while the jury is present. The United States further requests that this Court instruct Defendant's counsel to inform any potential witnesses of this Court's Order—and the prohibitions included therein—prior to trial.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

*Electronically filed on August 9, 2021*
ALEXANDER F. FLORES
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico 87102
505-346-7274

I HEREBY CERTIFY that on August 9, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy of this filing to be sent to counsel for Defendant.

*/s/*
ALEXANDER F. FLORES
Assistant United States Attorney