IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Cr. No. 20-01370-KWR |
| **JULIAN LUCAS GARCIA III**, | ) |  |
| Defendant. | ) |  |

**UNITED STATES' OPPOSED NINTH MOTION IN LIMINE
TO ALLOW THE USE OF TRANSCRIPTS AS DEMONSTRATIVE AIDS**

The United States respectfully moves this Court for an order allowing the use of transcripts of the recorded statements of Defendant as demonstrative aids for the jury.

Defendant was contacted for his position on this motion and did not provide a response. The United States assumes that Defendant opposes the instant motion.

**1) Summary of Facts**

On June 9, 2020, the grand jury returned an indictment charging Defendant with one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1152 and 113(a)(6). (Doc. 2). On September 10, 2020, and July 15, 2021, the grand jury returned a superseding indictment and a second superseding indictment, respectively, that added Count 2, a violation of 18 U.S.C. § 13 and NMSA § 66-3-1010.3(A)(2): Operating an Off-Highway Vehicle While Under the Influence of Intoxicating Liquor or Drugs Resulting in Bodily Injury, and Count 3, a violation of 18 U.S.C. § 13 and NMSA § 66-3-1011: Operating an Off-Highway Vehicle on a Paved Street or Highway.

The second superseding indictment alleges that on July 4, 2019, the Defendant struck Jane Doe with an off-highway motor vehicle (hereinafter referred to as an ATV, or all-terrain vehicle) on a roadway within the exterior boundaries of the Ohkay Owingeh Pueblo Indian Reservation, Indian Country, in the District of New Mexico. *Id*. The indictment also alleged that the defendant was under the influence of alcohol while operating the ATV. The incident occurred at approximately 9:25 p.m. near the intersection of State Road 291 (SR291) and North McCurdy Road, Ohkay Owingeh, New Mexico. Jane Doe was crossing the road from the south to north side on foot after sunset when the subject, driving an ATV westbound on SR291 at a high speed and with the headlights off, struck Jane Doe and threw her sixty-nine (69) feet from the impact point.

Both Jane Doe and Defendant were transported by ambulance from the scene of the crash to Presbyterian Española Hospital for treatment. At the hospital, in the late hours of July 4 or early morning hours of July 5, Defendant was interviewed by New Mexico State Police Officer Justin Burke. The interview included this exchange:

> OFC. BURKE: Okay. And where – do you remember where the pedestrians were at or just –
> JULIAN GARCIA: There was no pedestrians on the road (inaudible).
> OFC. BURKE: Did you see them?
> JULIAN GARCIA: I didn't see anybody.
> OFC. BURKE: No?
> JULIAN GARCIA: No.
> OFC. BURKE: Okay. All right.
> JULIAN GARCIA: It's dark. There's no street lights through there.

Exhibit 1.[1]

---

[1] Redacted transcripts are provided to give the Court a representative sample of material for consideration. However, the United States intends to admit more than is presented here and asks

Months later, Defendant filed an insurance claim relating to the assault. On March 9, 2020, he was interviewed by phone by a representative of the insurance company. Responding to questioning, Defendant gave a far different story than he provided to Officer Burke on the night of the assault:

> JULIAN GARCIA: I avoided the accident of hitting the vehicle, and a pedestrian ahead of me was highly intoxicated, and I'm going to say it the way it is. She was highly intoxicated. She was a Native American, and she was like . . . She was jumping to the left, jumping to the right, jumping to the left, jumping to the right. Okay?
>
> At which time, I was veering left and right trying to figure out what this lady's doing because I'm trying to avoid her. And I think -- I – I'm a firm believer she didn't believe that I was -- she thought I was somebody else that they were messing around with throughout the day or throughout the -- throughout evening, or whatever.
>
> But I was steering to the right, I was steering to the left. She kept like moving around, jumping in front of me, swaying from side to side. She went hard left, I went hard right, and the lady jumped in front of the bike -- or ran in front of the bike or like screwed around, just messing around. And I struck the pedestrian with the ATV.

Exhibit 2.

Defendant was interviewed by the insurance company again on May 15, 2020. The narrative he provided there differed still from the first time he spoke with an insurance company representative:

> CAMERON STUCK: And how fast were you traveling at that time?
> JULIAN GARCIA: I can't say. I wasn't going very fast, because the car pulled out in front of me. I know I accelerated to move away from the car -- or to get out from the car hitting me, but I immediately started to slow down when I saw the

---

for a general order allowing the use of transcripts as demonstrative aids. The United States will limit the use of transcripts, as in all cases, to only the material that the United States has a good faith belief will be admissible in recorded form before the trier of fact.

> pedestrian running across the road. So I really can't say. I would say no more than 30 -- 30.
> CAMERON STUCK: About 30 miles an hour?
> JULIAN GARCIA: Um-hmm.
> CAMERON STUCK: And what was that roadway like?
> JULIAN GARCIA: No lights. There's no streetlights whatsoever. There's -- there wasn't any lights at all.
> CAMERON STUCK: Okay.
> JULIAN GARCIA: It's a very dark road.

Exhibit 3.

2) **Discussion**

In its case-in-chief the United States will seek to introduce the relevant contents of audio-recorded statements made by Defendant on July 5, 2019, March 9, 2020, May 15, 2020, and possibly other dates during separate interviews with law enforcement, insurance company representatives, and others. The United States respectfully requests the Court to allow the use of transcripts for the relevant contents of the audio recordings of Defendant's interviews as demonstrative aids to assist the jury with the audio recordings.

Federal Rule of Evidence 611(a)(1) provides that "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth." "Federal Rule of Evidence 611 confers on trial court[s] discretion to control the presentation of evidence, including the use of demonstrative evidence." *United States v. Garcia*, 334 F. App'x 609, 614 (5th Cir. 2009) (unpublished) (internal quotations omitted). "Allowing the use of ... pedagogical devices intended to present the government's version of the case is within the bounds of the trial court's discretion to control the presentation of evidence.... Such demonstrative aids typically are permissible to assist the jury in evaluating the evidence, provided the jury is forewarned that

[they] are not independent evidence." *Id*. Demonstrative aids include transcripts to assist the jury understand the witness statements contained in the audio recordings. See *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995) (transcripts may be admitted to assist the trier of fact); and *United States v. Mayes*, 917 F.2d 457, 462 (10th Cir. 1990) (limited use of transcripts is in the discretion of the trial court).

It is well-settled in this circuit that, when a recording is in English, the recording itself is the substantive evidence, and transcripts of that recording are merely demonstrative aids to help the finders of fact in understanding the evidence. The Tenth Circuit Criminal Pattern Jury Instructions (2021) specifically call for the use of transcripts where audio recordings are admitted:

> During this trial, you have heard sound recordings of certain conversations. . . . You were also given transcripts of those recorded conversations. Keep in mind that the transcripts are not evidence. They were given to you only as a guide to help you follow what was being said.

Instruction 1.40, <u>Cautionary Instruction During Trial</u>. When this rule is applied, the jurors are usually instructed that "[i]f you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read." *Id*.

In the instant case, the Court should exercise its discretion and determine that the transcripts can be offered by the United States in its case-in-chief as demonstrative aids.

**3) <u>Conclusion</u>**

Because the United States carries the burden of proof regarding assault resulting in serious bodily injury, it must be allowed to present evidence in the manner it sees fit within the

confines of the Rules of Evidence. Thus, the United States respectfully requests a pre-trial ruling allowing the use of transcripts as demonstrative aids for the relevant contents of the audio recordings of Defendant's interviews.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

*Electronically filed on August 9, 2021*
ALEXANDER F. FLORES
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on August 9, 2021, I
filed the foregoing electronically through the
CM/ECF System, which caused counsel for the
defendant to be served by electronic means, as more
fully reflected on the Notice of Electronic Filing.

*/s/*
ALEXANDER F. FLORES
Assistant United States Attorney